**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 95-3396SD
_____

Ralph Read, M.D.,                          *
                                           *
     Plaintiff-Appellee,         *
                                           *
   v.                                   *
                                           *
Medical X-Ray Center, P.C., a              *
South Dakota professional                  *
corporation;                               *
                                           *
     Defendant-Appellant,        *
                                           *
Lynn A. Hendrickson; Daryl R.              *
Wierda,                                    *
                                           *
     Defendants.                 *


_____

No. 95-3530SD
_____

Ralph Read, M.D.,                          *
                                           *
     Plaintiff-Appellant,        *
                                           *   Appeals from the United States
   v.                                   *   District Court for the
                                           *   District of South Dakota.
Medical X-Ray Center, P.C., a              *
South Dakota professional                  *
corporation; Lynn A.                       *
Hendrickson, M.D.; Daryl R.                *
Wierda, M.D.,                              *
                                           *
     Defendants-Appellees.       *


_____

No. 95-3897SD
_____

Ralph Read, M.D.,                          *
                                           *

                Plaintiff-Appellant,        *
                                            *
        v.                                  *
Medical X-Ray Center, P.C., a               *
South Dakota professional                   *
corporation,                                *
                                            *
                Defendant-Appellee.         *
                                    _____

                        Submitted:  October 21, 1996

                        Filed: April 2, 1997
                                    _____

Before FAGG, HEANEY, and HANSEN, Circuit Judges.
                                    _____


FAGG, Circuit Judge.


        After twelve years as a partner in Medical X-Ray Center, P.C., a
group of radiologists in Sioux Falls, South Dakota, Dr. Ralph Read quit and
set up a competing independent practice.  When his own practice failed, Dr.
Read brought this antitrust lawsuit against Medical X-Ray Center and two
of its doctors, Lynn A. Hendrickson and Daryl R. Wierda (collectively MXC),
asserting MXC engaged in anticompetitive conduct and MXC's conduct
prevented Read from competing successfully in the Sioux Falls area.  A jury
found in Dr. Read's favor on his Sherman Act conspiracy and monopolization
claims. See 15 U.S.C. §§ 1, 2 (1994).  Finding no evidence of conspiracy,
the district court overturned the jury's verdict on Dr. Read's conspiracy
claim and entered judgment as a matter of law (JAML).  The district court
upheld the jury's verdict on Dr. Read's monopolization claim, however, even
though the court believed Read's practice failed because of his practice's
competitive shortcomings rather than any anticompetitive conduct by MXC.
MXC appeals, and Dr. Read cross appeals. Viewing the evidence in the light
most favorable to Dr. Read, see Amerinet, Inc. v. Xerox Corp., 972 F.2d
1483, 1505 (8th Cir. 1992), we conclude a

reasonable jury could only find Dr. Read's business failed because of his own competitive flaws. Thus, Dr. Read did not establish causation, an essential element of his case, and we reverse on MXC's appeal and affirm on Dr. Read's cross appeal.

In 1987, Dr. Read decided his MXC work schedule was too rigorous. Dr. Read's family wanted to stay in Sioux Falls, but his contract with MXC contained a covenant not to compete for two years within a twenty-five mile radius of the city. Read proposed several options for reduced workload and compensation. Most were rejected, but MXC agreed to employ Read as an independent contractor and continued to include Read on its hospital schedules. Read left the partnership in 1988, worked as an independent contractor for a year, and renewed the contract for a second year. When the second contract expired, MXC offered to renew it, but Read told MXC he was being exploited and he intended to launch his own practice. According to Dr. Read, MXC's Dr. Soye told him MXC "would fight [him] every step of the way."

When he started his own business in June 1990, Read targeted only a hospital-based diagnostic radiology practice. For several years, MXC radiologists had been the only ones practicing at Sioux Falls' largest hospitals, Sioux Valley Hospital (SVH) and McKennan Hospital. MXC rather than the hospitals scheduled the individual radiologists to ensure 24-hour coverage. Dr. Read informed SVH, McKennan, and MXC that he was willing to take his fair share of night call and weekends, but that he would not be available himself 24 hours every day of the week. SVH had an open staff and Read had privileges to practice radiology, so Read posted schedules at SVH showing the hours he would be on the premises. On one schedule, Read indicated he would only be at SVH for three hours a day. Dr. Read carried a beeper, but the schedule stated any urgent work should be performed by other radiologists, that is, MXC doctors, when Read was not there.

Dr. Aspaas, SVH chief of staff at the time, felt SVH's primary care doctors should be able to choose between MXC or Dr. Read for their patients' radiology needs. When Dr. Aspaas suggested a choice card system, Read proposed language that would permit SVH's physicians to choose Read to interpret their x-rays if he was available, but to default their choice to MXC if Read was not at the hospital. MXC would not agree to become Dr. Read's safety net, however. Instead, the choice card system put in place allowed doctors to choose between MXC and Dr. Read's independent practice on a case-by-case basis. Dr. Read then sent letters to the SVH doctors advertising quality care at prices well below MXC's. MXC did not retaliate against the SVH doctors who chose Dr. Read, but actually provided coverage when Dr. Read was not there.

MXC was willing to incorporate Read on its SVH schedule to ensure 24-hour coverage of his patients if Dr. Read signed a coverage contract and provided his own schedule in advance. The proposed contract stated Read would pay MXC an unspecified sum to cover Read's cases when Read was not on SVH premises, and MXC would bill the patients directly for its services. Read did not acknowledge the offer for three months because he thought it was a practical joke. Read believed MXC had an ethical obligation to cover his patients, and he did not have to pay MXC anything for backing him up. In February 1991, Read informed MXC of his refusal to negotiate a coverage contract for any price. Around the same time, Dr. Read accepted a fellowship at the University of Nebraska Medical Center in Omaha that he had applied for the previous December.

On appeal, MXC asserts the district court should have granted JAML on Read's § 2 monopolization claim because the failure of Read's practice was caused by the practice's deficiencies rather than any predatory conduct by MXC. According to MXC, Read caused

his own injury by failing to provide 24-hour service for his patients and by refusing to work a reasonable schedule. On the other hand, Dr. Read contends his practice failed because MXC had foreclosed every viable practice option by refusing to cooperate at SVH, entering into exclusive contracts at the other hospitals and the Central Plains Clinic, and placing restrictive covenants in MXC's employment contracts. Having carefully reviewed the record, we agree with MXC that Dr. Read caused his own business's demise.

To prevail on his antitrust claims, Dr. Read had to show a reasonable jury could find MXC's allegedly anticompetitive conduct was "a material cause" of his injury. National Ass'n of Review Appraisers & Mortgage Underwriters, Inc. v. Appraisal Found., 64 F.3d 1130, 1135 (8th Cir. 1995), cert. denied, 116 S. Ct. 1676 (1996); Amerinet, 972 F.2d at 1490; see Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1335 (10th Cir. 1996) (causation requirement applies to private plaintiffs seeking to invoke antitrust laws), pet. for cert. filed, 65 U.S.L.W. 3611 (Feb. 26, 1997) (No. 96-1365). A material cause is a "substantially contributing factor." National Ass'n of Review Appraisers, 64 F.3d at 1135. Dr. Read cannot recover if the decline of his business was attributable to causes other than MXC's behavior. Id.

As the district court observed, Dr. Read did not take reasonable steps to compete head-to-head with MXC in the inpatient radiology market. The hospitals and primary care doctors desired 24-hour service for their patients. MXC provided this service, and Dr. Read did not. When MXC proposed a reasonable written contract that would have solved Dr. Read's coverage problem, Read refused to discuss the proposal. Thus, Read's lack of coverage cannot be blamed on MXC. Dr. Read made the voluntary choice not to provide round-the-clock service, either by doing it himself, or by hiring someone else, and this was his downfall. Dr. Read presented no evidence that any individual MXC doctor wanted to cover Dr. Read

but could not because of MXC's restrictive covenants. Simply put, Read was trying to force MXC to cover his business without following the medical community's normal coverage practices--paying MXC compensation for the service or agreeing to back up MXC doctors in exchange.  Read wanted to "free-ride," avoid the cost of 24-hour coverage by forcing MXC to provide it to him for free, so he could undercut MXC's prices.

Read's lack of coverage cost him business at SVH and McKennan.  Some SVH doctors who initially chose Dr. Read switched to MXC when Dr. Read told them he could not provide 24-hour coverage.  When McKennan expressed concern to Dr. Read about his coverage deficiency, Dr. Read did nothing to address it.  McKennan then made a unilateral decision to deal with MXC exclusively, despite MXC's refusal of an exclusive contract, because of concerns about patient care.

As for other potential clients, Dr. Read made little or no effort to pursue them.  The Sioux Falls Veterans' Administration (VA) Hospital had an open bid process for an exclusive contract.  Dr. Read did not submit a bid, even though his restrictive covenant had expired before the bidding closed.  MXC submitted the lowest bid and was awarded the exclusive contract.  Similarly, Dr. Read failed to compete for a contract at Central Plains Clinic (CPC).  The CPC business manager testified Dr. Read never asked for clinic business, and Read admitted he never made "a special effort to seek them out."  At Canton-Inwood Hospital, a facility twenty miles from Sioux Falls, Dr. Read refused to commit to a partnership with the MXC radiologist who had an independent contract there, so the radiologist sought the help of other MXC doctors. As for the SVH Outreach program, SVH alone decided not to use Dr. Read because of his limited availability. See Todorov v.  DCH Healthcare Auth., 921 F.2d 1438, 1459, 1462 (11th Cir. 1991) (no causation under §§ 1 or 2 where radiologists, regardless of their personal wishes,

were not causally responsible for hospital's unilateral decision to deny competing radiologist privileges).

We conclude no reasonable jury could find MXC's conduct was a "substantially contributing factor" to the failure of Dr. Read's independent practice.  National Ass'n of Review Appraisers, 64 F.3d at 1135.  The decline of Dr. Read's business was caused by factors other than MXC's allegedly anticompetitive behavior.  See id.  Dr. Read rejected MXC's offer to negotiate a formal coverage agreement, did not respond to McKennan's concern that he would not cover his practice there, did not compete with MXC for contracts at the VA and CPC, and was excluded from the SVH Outreach program and Canton because of unilateral decisions by their administrators.  Thus, the district court properly granted JAML on the § 1 conspiracy claim, and should have granted JAML on the § 2 monopolization claim as well.  See id. at 1136 (causation is an essential element of 15 U.S.C. §§ 1, 2 claims).

Given the absence of causation, we need not decide whether MXC engaged in illegal anticompetitive behavior.  See id. at 1134. Nevertheless, we believe Dr. Read's injury was caused by legitimate competition rather than anticompetitive conduct.  In our view, MXC's insistence on a coverage contract from a price-chopping competitor was not unreasonable or anticompetitive.  See Blue Cross & Blue Shield v. Marshfield Clinic, 65 F.3d 1406, 1413-14 (7th Cir. 1995), cert. denied, 116 S. Ct. 1288 (1996); Konik v. Champlain Valley Physicians Hosp. Med. Ctr., 733 F.2d 1007, 1014 (2d Cir. 1984).  MXC had legitimate business justifications for its actions towards Dr. Read.  See Trace X Chem., Inc. v. Canadian Indus., 738 F.2d 261, 266 (8th Cir. 1984); Konik, 733 F.2d at 1014.

We now turn to the points raised in Dr. Read's cross appeal. Given our rejection of the monopolization claim for lack of causation, the district court properly dismissed the attempted

monopolization claim. Absence of causation also disposes of the tortious interference claim. See National Ass'n of Review Appraisers, 64 F.3d at 1137. Because we have reversed Dr. Read's only prevailing claim, we need not consider his arguments about certain jury instructions, which are unrelated to our decision, future damages, and dismissal of the individual defendants. Since Dr. Read suffered no antitrust injury, we reverse the award of attorney fees. See 15 U.S.C. § 15(a).

Without doubt, an independent practice is a challenging undertaking. Dr. Read sought the perks of independent practice, setting his own hours and not having to deal with other partners, without one of the drawbacks, always being on call. Dr. Read chose not to provide the coverage and availability offered by his competitor, MXC, and for this reason potential clients chose MXC over Dr. Read's competing practice. Dr. Read's problem is, the antitrust laws were enacted to protect competition, not competitors. See Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 338 (1990).

Accordingly we reverse the district court's judgment on MXC's appeal, and we affirm the district court's judgment on Dr. Read's cross appeal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-